1

2

3

4

5

6

7

8                      **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   ASHLEY ELIZABETH RUDOPLH,                No.  2:20-CV-0922-DMC

12              Plaintiff,

13         v.                                 MEMORANDUM OPINION AND ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the written consent of all parties, ECF Nos. 6 and 7, this case is before the

21   undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28

22   U.S.C. § 636(c); see also ECF No. 8 (minute order referring case to Magistrate Judge).  Pending

23   before the Court are the parties' briefs on the merits, ECF Nos. 16 and 21.

24              The Court reviews the Commissioner's final decision to determine whether it is:

25   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

28   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1  a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

2  including both the evidence that supports and detracts from the Commissioner's conclusion, must

3  be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

4  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

5  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

6  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

7  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

11  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

13  Cir. 1988).

14         For the reasons discussed below, the Commissioner's final decision is reversed

15  and the matter will be remanded for further administrative proceedings.

16

17                    **I.  THE DISABILITY EVALUATION PROCESS**

18         To achieve uniformity of decisions, the Commissioner employs a five-step

19  sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§

20  404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

21         Step 1      Determination whether the claimant is engaged in
22                     substantial gainful activity; if so, the claimant is presumed
                       not disabled and the claim is denied;

23         Step 2      If the claimant is not engaged in substantial gainful activity,
24                     determination whether the claimant has a severe
                       impairment; if not, the claimant is presumed not disabled
25                     and the claim is denied;

26         Step 3      If the claimant has one or more severe impairments,
                       determination whether any such severe impairment meets
27                     or medically equals an impairment listed in the regulations;
                       if the claimant has such an impairment, the claimant is
                       presumed disabled and the claim is granted;

28

                                    2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///

///

///

///

3

1

## II.  THE COMMISSIONER'S FINDINGS

2          Plaintiff applied for a period of disability and disability insurance benefits on

3    January 4, 2012. Subsequently, Plaintiff was found disabled on November 25, 2013, for a period

4    beginning on May 28, 2011, and ending November 1, 2016.  After the determination that the

5    disability ended in late 2016 was upheld by a State agency Disability Hearing Officer, Plaintiff

6    filed a written request for hearing before an Administrative Law Judge (ALJ).  See CAR 11.[1]

7    Plaintiff claims disability did not end on November 1, 2016.  See id.  The administrative hearing

8    was held on February 12, 2019, before ALJ Carol L. Buck.  In a May 8, 2019, decision, the ALJ

9    concluded Plaintiff is not disabled since November 1, 2016, based on the following relevant

10   findings:

11               1.     Medical improvement occurred on November 1, 2016.

12               2.     Since November 1, 2016, the claimant has the following severe
                       impairment(s): lumbar degenerative disc disease status post
13                     laminectomy. The impairment was found to result in the residual
                       functional capacity to perform sedentary work except the Plaintiff
14                     required a sit/ stand option one or two times per hour at the
                       workstation. She required one or two 15-minute breaks per hour
15                     and would miss work two days per month;

16               3.     Since November 1, 2016, the claimant does not have an
                       impairment or combination of impairments that meets or medically
17                     equals an impairment listed in the regulations;

18               4.     Since November 1, 2016, the claimant has the following residual
                       functional capacity: she can perform sedentary work as defined in
19                     20 CFR 404.1567(a) except she requires a sit/stand option at the
                       workstation for a couple of minutes and would not be off-task. She
20                     can lift 10 pounds occasionally and 5 pounds frequently. She
                       cannot climb ladders, ropes or scaffolds. She can stand and/ or
21                     walk a total of 2 hours in an 8-hour day and sit the remaining time;

22               5.     Considering the claimant's age, education, work experience,
                       residual functional capacity since November 1, 2016, as well as
23                     vocational expert testimony, there are jobs that exist in significant
                       numbers in the national economy that the claimant can perform.
24
             See id. at 13-21.
25

26   After the Appeals Council declined review on April 8, 2020, this appeal followed.

27   _____

28   [1]        Citations are to the Certified Administrative Record (CAR) lodged on October 8,
     2021, ECF No. 11.

4

1

## III.  DISCUSSION

2

In this action for judicial review, Plaintiff argues:

3
4

       1.     At Step 4, the ALJ failed to address an evaluation by Dr. Vedat Deviren of U.C. San Francisco Medical Center, resulting in an incomplete residual functional capacity assessment.

5
6

       2.     At Step 4, the ALJ failed to provide clear and convincing reasons for rejecting her statements and testimony, which should be credited as true.

7
8

       3.     The ALJ's finding of medical improvement at Step 4 is not supported by substantial evidence.

9
10

       4.     At Step 4, the ALJ failed to afford appropriate weight to the opinions of her treating physician and erred in relying on the opinions from non-treating, non-examining sources.

11

       5.     At Step 5, the ALJ failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles.

12
13

       6.     At Step 5, the ALJ erred in failing to cite a significant number of jobs.

14

    A.     **<u>Evaluation of Medical Opinions</u>**

15

"The ALJ must consider all medical opinion evidence." <u>Tommasetti v. Astrue</u>,

16

533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not

17

explicitly rejecting a medical opinion.  <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir.

18

2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical

19

opinion over another.  <u>See</u> <u>id.</u>

20

Under the regulations, only "licensed physicians and certain qualified specialists"

21

are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); <u>see also</u> <u>Molina v. Astrue</u>,

22

674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on

23

an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it

24

rests on his own independent examination of the claimant." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144,

25

1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute

26

substantial evidence when the opinions are consistent with independent clinical findings or other

27

evidence in the record.  <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002).  Social

28

workers are not considered an acceptable medical source.  <u>See</u> <u>Turner v. Comm'r of Soc. Sec.</u>

Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).  Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

For all claims, as here, filed before March 27, 2017, ALJs are bound by regulations and case law requiring ALJs to give physicians' opinions different weights, depending on the relationship between the physician and the claimant.  See 20 C.F.R §§ 404.1527(c) & 416.920(c); Garrison v. Colvin, 759 F.3d 995, 1017-18 (9th Cir. 2014).  This rule is known as the treating physician rule.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion in a claim filed before March 27, 2017, the Court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

6

1           A contradicted opinion of a treating or examining professional may be rejected

2    only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d

3    at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the

4    facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

5    finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

6    legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

7    professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

8    without other evidence, is insufficient to reject the opinion of a treating or examining

9    professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

10   conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

11   1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

12   also Magallanes, 881 F.2d at 751.

13          At Step 4, the ALJ considered the medical opinion evidence of record in

14   determining Plaintiff's residual functional capacity.  See CAR 18.  Specifically, the ALJ

15   evaluated opinions from Drs. Acinas and Sampley, agency reviewing consultants.  See id.

16   As to these opinions, the ALJ stated:

> State agency medical consultants Drs. Acinas and Samplay found that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk 4 hours in an 8-hour day. She could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She could frequently balance but could not climb ladders, ropes or scaffolds. She should avoid concentrated exposure to hazards such as work at heights (Ex. Bl IE, B3 IF, B33F).

> These opinions are persuasive because they are consistent with the discussed activities, treatment and medical findings. Their assessments are based on their review of the medical records and their findings consistent with and supported by the overall medical records in the file. In light of the longitudinal treatment record and the subjective complaints of the claimant and her third parties, the undersigned finds no ambiguity in limiting the claimant to a range of sedentary exertional work with a sit/stand option as set forth in this decision.

> CAR 18.

27   / / /

28   / / /

7

1    Notably, the ALJ relied on the opinions of Drs. Acinas and Samplay to determine

2    that medical improvement had occurred by November 1, 2016.  See id. at 15.  The ALJ stated:

3    The medical evidence supports a finding that, by November 1, 2016, there
     had been a decrease in medical severity of the impairment. State agency
4    medical consultants M. Acinas, MD and H. Samplay, MD found that
     significant medical improvement had occurred (Ex. B11A, B33F).
5    These opinions are persuasive because the consultants are familiar with
     Social Security rules and their assessments are consistent with the
6    claimant's increased functioning, the treatment she has sought, and with
     the objective findings as discussed below.

7
     CAR 15.
8

9    Concerning the evaluation of the medical opinion evidence at Step 4, Plaintiff

10   raises three issues.  First, Plaintiff contends that the ALJ's finding of medical improvement as of

11   November 1, 2016, is not supported by substantial evidence.  Second, Plaintiff argues that the

12   ALJ failed to consider opinion evidence offered by Dr. Deviren of U.C. San Francisco Medical

13   Center.  Third, Plaintiff contends the ALJ failed to afford appropriate weight to the opinions of

14   her treating physician.

15                1.    Medical Improvement

16   According to Plaintiff:

17   Ashley Rudolph (hereinafter "Rudolph") was found disabled in
     2013. In 2016 the SSA changed their decision to not disabled. The ALJ
18   finds that her condition "improved". The Medical record does not support
     the ALJ. Rudolph still uses a walker because of her post lacinatomy
19   impairment and developed chronic pain in her neck, iscosteophyte (bone
     spurs). Rudolph lost her insurance when she was taken off disability.
20   Rudolph receives treatment at UCSF. The new MRIs show deterioration
     not improvement. The ALJ did not address (a) the narrowing of her
21   lumbar spine and bone spurs in her neck, (b) chronic pain and (c) lack of
     evidence of "improvement."
22
     ECF No. 16, pg. 14.
23

24   It appears the "new MIRs" to which Plaintiff refers are from 2018 and were taken

25   at U.C. San Francisco Medical Center.  These records are contained in the CAR at Exhibit B37F.

26   See CAR 1041-58.  These records show that Plaintiff was seen by Dr. Deviren on January 16,

27   2018, for complaints of lower back pain, leg pain, neck pain, left arm pain, and right hand

28   numbness.  See CAR 1047.  Dr. Deviren diagnosed degenerative disc disease, bilateral low back

                                         8

pain with left-sided sciatica, right-sided thoracic back pain, neck pain, and cervical disc

herniation.  See id. at 1048.  On objective examination, Plaintiff's motor strength was normal, but

sensation was dimished at L5 and S1.  See id. at 1051.  Straight-leg raise test was negative.  See

id.  Dr. Deviren documented that he had reviewed a December 2017 cervical MRI which revealed

C5-6 and C6-7 disc osteophyte complexes with moderate-to-severe spinal stenosis, worse at C5-

6.  See id.  Dr. Deviren also noted advanced Modic I changes at both levels.  See id.  Dr. Deviren

further noted broad-based protrusions at both levels with moderate left lateral recess stenosis.  See

id.  Dr. Deviren concluded that Plaintiff's "pain and myelopathy are not improving and interfere

with her activity level."  Id.  Dr. Deviren did not, however, provide any specific functional

opinions.

Dr. Deviren saw Plaintiff again on February 1, 2019, for a follow-up visit.  See id.

Physical examination was normal at this visit.  See id. at 1051-57.  This progress note also

reflects Dr. Deviren's analysis of an MRI taken in January 2019.  See id. at 1057.  Dr. Deviren

stated that this exam showed mild thoracic degenerative disc disease without significant stenosis.

See id.  There was, however, L5-S1 disc desiccation, mild Modic I/II endplate change, and

moderate left foraminal stenosis.  See id.  As with the note from January 2018, discussed above,

Dr. Deviren did not make any functional assessments at the February 2019 visit.

Given that Dr. Deviren never rendered any functional opinions relating to the MRI

results, the Court does not agree that the U.C. San Francisco Medical Center record undermine

the ALJ's determination that medical improvement occurred as of November 1, 2016.  Notably,

there is no medical opinion evidence indicating that the 2018 and 2019 MRI results indicate any

functional deterioration.  Here, the ALJ properly relied on opinions from the agency consultative

doctors, which constitutes substantial evidence.  See Thomas, 278 F.3d at 957

2.    Dr. Deviren's Opinions

Plaintiff argues the ALJ erred by failing to consider opinions offered by Dr.

Deviren, who evaluated Plaintiff in 2018 and after.  See ECF No. 16, pgs. 14-15.  As discussed

above, however, the record of Dr. Deviren's treatment reflects no functional opinions.  Because

Dr. Deviren did not render any opinions – and Plaintiff cites to none – the Court does not agree

1   that the ALJ erred as to Dr. Deviren, whose records from U.C. San Francisco Medical Center are

2   discussed in the hearing decision.

3                   3.     <u>Reliance on Non-Treating, Non-Examining Sources</u>

4             Plaintiff appears to argue that the ALJ erred by relying on the opinions of Drs.

5   Acinas and Samplay, who neither treated nor examined Plaintiff, but who only reviewed an

6   incomplete record to arrive at their opinions.  <u>See</u> ECF No. 16, pg. 23.  According to Plaintiff:

7           A treating physician's opinion is entitled to special weight because
a treating physician "is employed to cure and has a greater opportunity to
8   know and observe the patient as an individual." *McAllister v. Sullivan*, 888
F.2d 599, 602 (9th Cir. 1989).  The medical opinion of a claimant's
9   treating physician is given "controlling weight" so long as it "is well-
supported by medically acceptable clinical and laboratory diagnostic
10   techniques and is not inconsistent with the other substantial evidence in
[the plaintiff's] case record." 20 C.F.R. § 404.1527(c)(2). and legitimate
11   reasons that are based on substantial evidence in the record. *See
Magallanes*, 881 F.2d at 751(9th Cir. 1989); *Reddick v. Chater*, 157 F.3d
12   715, 725 (9th Cir. 1998).
        Here the ALJ relies upon non examining doctors and fails to
13   address the expert medical opinion from UCSF. Therefore the ALJ's
findings are not supported by substantial evidence using clear and
14   convincing reasons.

15             ECF No. 16, pg. 23.

16             Again, because the U.C. San Francisco Medical Center records at Exhibit B37F,

17   which consist of two progress notes prepared by Dr. Deviren over a year apart, contain no

18   opinions, the ALJ did not err by relying on the opinions offered by Drs. Acinas and Samplay.  In

19   fact, these appear to be the only opinions of record regarding functional limitations.  Notably,

20   Plaintiff's brief does not identify any treating source opinions.

21           **B.**      **<u>Evaluation of Plaintiff's Statements and Testimony</u>**

22             The Commissioner determines the weight to be given to a claimant's own

23   statements and testimony, and the court defers to the Commissioner's discretion if the

24   Commissioner used the proper process and provided proper reasons.  <u>See</u> <u>Saelee v. Chater</u>, 94

25   F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.

26   <u>See</u> <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.

27   <u>See</u> <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify

28   what testimony is not afforded weight and what evidence undermines the testimony.  <u>See</u> <u>id.</u>

Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

At Step 4, the ALJ evaluated Plaintiff's statements and testimony in determining Plaintiff's residual functional capacity. See CAR 15-18. The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant alleged continuing disability due to nerve impingement and "paper thin disc" at L5, S1. She reported difficulty dressing her lower body, standing to prepare meals, lifting, bending and twisting when doing chores, sitting for extended periods to drive and sit, shopping due to difficulty walking, standing for long, lifting more than 10 to 15 pounds, and completing tasks. She has difficulty squatting, reaching, kneeling, and climbing stairs. She stated she had "good" days with a "normal" pain level of 5-6 and "bad" days with pain levels of 8-9. She has "extreme" fatigue and "extreme" muscles spasms. Her pain and fatigue require her to take frequent breaks when doing tasks. She has bladder and bowel problems. She reported taking ibuprofen. She later stated she was participating in physical therapy (Ex. B3E, B7E, B11E, B10E, B13E).
>
> At the hearing, the claimant reported she sought treatment at UC San Francisco for multiple sclerosis workup; she felt dizzy, disoriented, fatigued, and she was dropping things. She is currently taking ibuprofen and Nortriptyline for pain. She has chronic, widespread pain with difficulty standing on concrete for long. She cannot sit all day in a chair without moving around "a lot". She is not able to do her hobbies such as gardening and fishing. She has difficulty driving long distances. She was tried to dance at her brother's wedding but ended up with increased pain.

CAR 15-16.

The ALJ concluded that Plaintiff's statements and testimony "are not entirely consistent with the objective medical and other evidence. . . ." Id. at 16. The ALJ offered the following reasons: (1) Plaintiff's statements and testimony are inconsistent with the objective medical evidence, see id.; (2) Plaintiff has not "demonstrated a good will effort to obtain and maintain medical treatment. . .," id. at 16-17; and (3) Plaintiff's statements and testimony are inconsistent with her daily activities, see id. at 17-18. Plaintiff contends the ALJ erred in evaluating her statements and testimony by failing to discuss the U.C. San Francisco medical records which show Plaintiff suffers from chronic pain. See ECF No. 16, pgs. 15-16. Plaintiff

1    also contends that the ALJ erred by relying on lack of treatment and Plaintiff's daily activities.

2    See id. at 19-22.

3            At the outset, the Court rejects Plaintiff's argument that the ALJ's analysis of her

4    statements and testimony is flawed because the ALJ ignored the U.C. San Francisco Medical

5    Center records.  As discussed above, the record reflects that the ALJ did, in fact, discuss these

6    records.  Moreover, the ALJ discussed Plaintiff's allegations of chronic pain, contrary to

7    Plaintiff's contention that these allegations were ignored.  Specifically, the ALJ stated:

8            In sum, the sporadic and sparse treatment along with the routine treatment
             modalities consisting primarily of medications with few changes
9            persuades the undersigned that the claimant's allegations of daily severe
             symptoms and significant limitations are inconsistent with the medical
10           evidence of record overall. Nevertheless, the undersigned acknowledges,
             based on the longitudinal record, that her allegations of chronic pain are
11           partially supported by the treatment and medication she sought for her
             conditions. While there were a couple of occasions of increased
12           symptoms, the record does not reveal any significant signs or marked
             limitations that persisted throughout the relevant period. The weight of the
13           evidence shows that while she experiences some pain, numbness and
             fatigue, they are controlled such that she could nonetheless perform a
14           range of sedentary exertional work. An individual need not be totally
             symptom-free in order to perform work-related activities.

15           CAR 18.

16

17   Plaintiff does not offer any argument as to why this analysis is flawed.

18           The Court turns to Plaintiff's remaining arguments concerning the ALJ's reliance

19   on lack of treatment and daily activities.

20           1.    Lack of Treatment

21           If there is objective medical evidence of an underlying impairment, the

22   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

23   because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

24   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

25           The claimant need not produce objective medical evidence of the
             [symptom] itself, or the severity thereof.  Nor must the claimant produce
26           objective medical evidence of the causal relationship between the
             medically determinable impairment and the symptom.  By requiring that
27           the medical impairment "could reasonably be expected to produce" pain or

28           / / /

                                    12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

another symptom, the <u>Cotton</u> test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See <u>Bunnell</u>, 947 F.2d at 345-47.

In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See <u>Smolen</u>, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See <u>Carmickle</u>, 533 F.3d at 1161 (citing <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

As to inconsistency with the objective medical evidence and treatment history, the ALJ stated:

These allegations of continuing disability are inconsistent with the treatment the claimant has sought and with the objective findings. An MRI of the lumbar spine obtained in February 2016 revealed no significant changes since 2012 (Ex. B26F/14). Primary care provider Norman Arai, MD indicated that the claimant continued to treat with him for symptoms of back pain for which she was seen every "few months". He indicated she had loss of motion of the back and right knee with "mild" tenderness and diminished sensation in the leg lateral leg. There was no swelling, warmth, redness, or muscle spasms. Straight leg raise tests were negative and her muscle strength was "normal" without muscle atrophy. He had not performed any laboratory tests or prescribed any assistive device necessary for ambulation. He indicated no limitations in her ability to lift, carry, reach, or otherwise use her upper extremities. He reported that injections did not help her back pain and her prognosis was "fair". (Ex. B26F).

/ / /

13

During the period at issue beginning November 1, 2016, the claimant has not demonstrated a good will effort to obtain and maintain medical treatment consistent with her alleged impairment as required in 20 CFR 404.1529(c)(2)(3) and SSR 16-3p. Records from all the medical sources she reported at the hearing were requested. Treatment notes from Dr. Arai show the claimant was seen on merely one occasion for complaints of back pain (Ex. B29F, B30F, B36F). In March 2017, she reported increased pain after she "painted" and a "long car ride to the state of Washington. She reported using ibuprofen for pain and cyclobenzaprine at night to sleep. Examination showed she was "able to easily get up from sitting to standing. Her gait is normal. She is able to flex her back completely." Dr. Arai advised the claimant to take Aleve twice a day and continue cyclobenzaprine at bedtime, stretching, heat, and exercising (Ex. B29F/1). The record documents no surgeries, physical therapy, chiropractic adjustments, aquatherapy, pain management evaluations, or frequent medication changes to control the alleged symptoms during the period at issue (Ex. B18F-B37F). Social Security Ruling 16-3p states that had the claimant genuinely felt debilitating symptoms, it would have been more likely that she would have sought and continued appropriate treatment "such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources."

MRI of the cervical spine obtained in December 2017 revealed degenerative changes at C5-6 and C6-7 with central canal narrowing. MRI of the thoracic spine revealed "minimal" findings without spinal canal or foraminal narrowing (Ex. B34F, B35F, B36F).

The claimant was seen at UC San Francisco medical center in January 2018 with complaints of low back pain, neck pain and arm pain. She denied any bowel or bladder symptoms. Examination revealed intact motor strength at 5/5 with some loss of sensation in the left lower extremity along the LS-S1 dermatomes. Straight leg raise tests were negative and her gait was "Normal". Reflexes were symmetrical. She was prescribed Nortriptyline at bedtime. Cervical injections were also recommended.

Although she was advised to follow up in clinic 3 to 4 weeks after cervical injections, the record documents no further visits until February 1, 2019. At time, she did not report undergoing cervical injections. She reported "mild" relief with Nortriptyline and "home" exercises. She reported using ibuprofen on an "intermittent" basis due to stomach upset. Examination was unchanged. Cervical epidural injections were again recommended and she was advised to take Nortriptyline "more consistently" (Ex. B37F).

CAR 16-17.

Plaintiff argues:

Lack of treatment is not held against the claimant when the record indicates that claimant could not afford it. See *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (holding that because the claimant testified that "she had no insurance and could not afford treatment," her failure to comply with medication for her symptoms "is not a clear and convincing

14

1    reason for discrediting her symptom testimony"). *Ledesma v. Astrue*, No.
     C 10-5260 EDL (N.D. Cal. Feb. 9, 2012).

2              Here Rudolph explained that she did not have insurance because
     she hadn't had benefits for three years The ALJ replied "That makes

3    sense. So, yeah, now you would not have medical care." (AR 105-6).
     However the ALJ's findings Rudolph's lack of treatment to discredit her. In

4    fact, the UCSF records show overall Rudolph has attempted to keep her
     treatment going. As such, the ALJ has not provided clear and convincing

5    reasons to discredit Rudolph. Therefore, the ALJ's findings are not
     supported by substantial evidence using clear and convincing reasons.

6    ECF No. 16, pg. 20.

7

8        The Court agrees with Plaintiff that her sporadic treatment since November 1,

9    2016, is not a clear and convincing reason to discredit her statements and testimony.  At the

10   February 12, 2019, hearing, Plaintiff testified that, when it was determined that she was no longer

11   disabled as of November 1, 2016, she lost her access to health care insurance.  See CAR 105-06.

12   While the ALJ may cite to an unexplained lack of treatment, Plaintiff's lack of treatment here is

13   explained by the absence of insurance to pay for it.

14              2.      Daily Activities

15       Regarding reliance on a claimant's daily activities to discount testimony of

16   disabling pain, the Social Security Act does not require that disability claimants be utterly

17   incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

18   repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

19   does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

20   Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

21   Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

22   claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

23   restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

24   claimant was entitled to benefits based on constant leg and back pain despite the claimant's

25   ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

26   activities are not easily transferable to what may be the more grueling environment of the

27   workplace, where it might be impossible to periodically rest or take medication").  Daily

28   activities must be such that they show that the claimant is ". . .able to spend a substantial part of

                                                    15

his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to Plaintiff's daily activities, the ALJ stated:

. . .Although the claimant persuasively testified at the hearing that her back pain prevents her from doing her hobbies of gardening and fishing, her activities nevertheless demonstrate considerable improvement in her functionality since the CPD. The claimant reported that, in addition to working occasionally as a substitute teacher, she also cared for her father until his passing and she cares for two of her children still in her home. She drives them to their activities, attends their sporting events, and keeps score for one sport. While she must structure her activities, she is able to make daily meals, sweep, vacuum, and fold laundry. She also cleans windows occasionally. She attends church once a week and walks for exercise 3 to 4 times a week for 45 minutes to one hour. She is able to shop for up to 1.5 hours, and reported that she has "no problem" dressing, bathing, caring for her hair, shaving, feeding herself, or using the toilet. Finally, she cares for her grandson who is now two years of age 3 to 4 days a week, 8 hours a day (Ex. B3E/11, B11E, hearing testimony).

The medical record further shows that the claimant is able to attend clinic appointments independently, provide a coherent history, answer questions appropriately, manage her medical care and medications, and advocate for herself. She demonstrates appropriate behaviors and appearance during the period at issue beginning November 1, 2016 (Ex. B29F-B37F). Clearly, the above activities are consistent with the determination of an ability to perform some work activity. Although the claimant may not be able to perform heavier type exertional activities, an inability to perform medium and light work does not preclude all work activity.

CAR 17-18.

Plaintiff contends:

Daily activities cannot be used for an adverse credibility factor[] unless these activities could be transferable to a work setting. Activities worked in a family or in a home which allows time to lay down are not transferable to a work environment. Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014), Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996) n.7 (recognizing that "many home activities may not be easily transferrable to a work environment").

ECF No. 16, pg. 21.

Plaintiff cites her examination by the ALJ at the hearing to support her contention that her daily activities are limited and, as such, not transferrable to a work setting.  See id. at 21-22.

/ / /

16

Turning to the February 12, 2019, hearing, Plaintiff testified that she took care of her ailing father (who has since passed) from January through August 2018.  See CAR 98-99. She also testified that, while she recently attempted, she was unable to stand on her feet or concentrate for long periods of time on a day-to-day basis.  See id. at 99.   As for chores, Plaintiff testified that she does dishes and folds laundry, though her children "move the laundry" for her. Id. at 101.  She further stated that she does what she can but only when "I feel good."  Id. Plaintiff stated that she is unable to do any gardening, which she used to enjoy.  See id. at 101-02. She also testified that she can no longer go fishing.  See id. at 102.  Plaintiff states that she cannot drive for long distances or lift anything over ten pounds.  See id.  Finally, as to what she can do, Plaintiff stated that she can no longer dance.  See id.

The Court next examines Plaintiff's written statements cited by the ALJ, Exhibits B3E and B11E.  While Exhibit B3E is undated, the CAR index indicates it was completed in June 2016 – before medical improvement as of November 1, 2016.  This exhibit is, therefore, not instructive as to Plaintiff's daily activities during the time at issue here (after November 1, 2016). Exhibit B11E is a Function Report completed by Plaintiff on September 16, 2017, and is relevant to the current case.  See CAR 330-42.  Plaintiff states as follows:

> • Her impairments limit the amount of time she can stand, and she cannot sit for extended periods of time.

> • It is difficult to bend, twist, lift, or move at a sustained pace.

> • Repeated days of working cause her condition to worsen.

> • She experiences extreme fatigue.

> • Pain wakes her up at night and causes increased fidgeting.

> • She has no problems with personal care, such as bathing, feeding herself, using the toilet, dressing, or shaving.

> • She does not require reminders for personal care or medication.

> • She prepares her own small simple meals once a day, sometimes twice a day if her children assist, and that many times she is too exhausted to cook at all.

> • She does house and yard work, but can only do such tasks for short periods (20-40 minutes at a time) before she must rest.

17

1               • She has difficulty lifting, walking, sitting, kneeling, bending,
standing, reaching, climbing stairs, and completing tasks.
2

3         The Court agrees with Plaintiff that, on this record, the ALJ's reliance on

4 Plaintiff's daily activities is misplaced.  Specifically, as outlined above, Plaintiff has testified to a

5 wide-range of daily activities.  However, she can only perform these activities on a limited basis

6 and certainly not to the level which would be transferable to a competitive full-time work setting.

7 The ALJ acknowledged as much by conceding that Plaintiff must structure her daily activities.

8 See CAR 17-18.

9               3.      Inconsistency with Objective Medical Evidence

10         While Plaintiff does not challenge the ALJ's reliance on inconsistency with the

11 objective medical evidence, the Court nonetheless addresses the issue in the context of the other

12 findings above. In particular, the Court has rejected the ALJ's citations to Plaintiff's lack of

13 treatment and daily activities, leaving only inconsistency with the medical evidence as a basis for

14 the ALJ's conclusions.  As indicated above, however, this alone is in insufficient reason to

15 discredit Plaintiff's statements and testimony.  The matter will be remanded to allow the

16 Commissioner to re-evaluate Plaintiff's statements and testimony.

17       **C.**     **Vocational Findings**

18         The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about

19 disability for various combinations of age, education, previous work experience, and residual

20 functional capacity.  The Grids allow the Commissioner to streamline the administrative process

21 and encourage uniform treatment of claims based on the number of jobs in the national economy

22 for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458,

23 460-62 (1983) (discussing creation and purpose of the Grids).

24         The Commissioner may apply the Grids in lieu of taking the testimony of a

25 vocational expert only when the Grids accurately and completely describe the claimant's abilities

26 and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v.

27 Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the

28 Grids if a claimant suffers from non-exertional limitations because the Grids are based on

exertional strength factors only.[2]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

"If a claimant has an impairment that limits his or her ability to work without directly affecting

his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered

by the Grids."  Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,

Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids

even when a claimant has combined exertional and non-exertional limitations, if non-exertional

limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d

1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

        In cases where the Grids are not fully applicable, as in this case, the ALJ may

meet his burden under step five of the sequential analysis by propounding to a vocational

expert hypothetical questions based on medical assumptions, supported by substantial

evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184

(9th Cir. 1995).  Specifically, where the Medical-Vocational Guidelines are inapplicable

because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain

vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

/ / /

/ / /

/ / /

---

[2]     Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e).  Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

1           Hypothetical questions posed to a vocational expert must set out all the substantial,

2    supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881

3    F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the

4    expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary

5    value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to

6    the expert a range of hypothetical questions based on alternate interpretations of the evidence, the

7    hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by

8    substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th

9    Cir. 1988).

10          At Step 5, based on vocational expert testimony, the ALJ determined that Plaintiff

11   is not disabled because she can perform other jobs that exist in the national economy in

12   significant numbers.  See CAR 19-20.  The ALJ found:

13          Since November 1, 2016, if the claimant had the residual functional

14          capacity to perform the full range of sedentary work, a finding of "not
            disabled" would be directed by Medical-Vocational Rule 201.27.
            However, the claimant's ability to perform all or substantially all of the

15          requirements of this level of work has been impeded by additional
            limitations. To determine the extent of erosion of the unskilled sedentary

16          occupational base caused by these limitations, the Administrative
            Law Judge asked the vocational expert whether jobs existed in the national

17          economy for an individual with the claimant's age, education, work
            experience, and residual functional capacity since November 1, 2016. The

18          vocational expert testified that given all of these factors the individual
            would be able to perform the requirements of representative occupations

19          such as Office Helper #239.567-010, light, SVP 2 (unskilled), but the
            position exists at the sedentary exertional level with approximately

20          100,000 positions nationally, Information Clerk #237.367-022, sedentary,
            SVP 4 but it also exists at the unskilled (SVP 2) level with approximately

21          80,000 positions, and Hand Packager #920.587-018, sedentary, SVP 2
            with 50% erosion of the available jobs yielding approximately 10,000

22          positions nationally.

23          Pursuant to SSR 00-4p, the undersigned has determined that the vocational
            expert's testimony is not consistent with the information contained in the

24          Dictionary of Occupational Titles (DOT). Mr. Dettmer testified that the
            DOT lists occupations based on the highest exertional level and SVP

25          requirements for jobs rather than the full range of requirements at which
            they are performed in the national economy.

26

27          Based on the testimony of the vocational expert, the undersigned
            concludes that since November 1, 2016, the claimant was capable of

28          making a successful adjustment to work that existed in significant
            numbers in the national economy. A finding of "not disabled" is therefore

1   appropriate under the framework of the above-cited rule.

2   CAR 20.

3   Plaintiff argues the ALJ's vocational finding is flawed in two ways. First, Plaintiff

4   argues that the ALJ's erred by not resolving conflicts between the vocational expert's testimony

5   and the Dictionary of Occupational Titles (DOT).  See ECF No 16 pgs. 17-18.  Second, Plaintiff

6   maintains that the ALJ erred in relying on vocational expert testimony as to an insufficient

7   number of jobs existing.  See id. at 18-19.  For the reasons discussed below, the Court rejects both

8   arguments.

9          1.      Conflict with the DOT

10  For Social Security benefits hearings, the DOT is the default presumption for

11  disability classifications. Massachi v. Astrue (9th Cir. 2007) 486 F.3d 1149, 1150.  Moreover, the

12  ALJ has an affirmative responsibility to ask about any possible conflict between vocational expert

13  evidence and information provided in the DOT.  Id.  The ALJ may, however, rebut the

14  presumption of applicability of the DOT when expert testimony exists that is supported by

15  persuasive evidence contradicting the DOT. See Murry v. Apfel, 1999 U.S. App. LEXIS 28911,

16  1, 9 (9th Cir. 1999) (holding that the Administrative Law Judge is not bound by the DOT

17  descriptions but can instead rely on the testimony of the vocational expert and own findings

18  specific to the individual plaintiff before the Administrative Law Judge); see also Tackett v.

19  Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (holding that the ALJ can rely on vocational expert's

20  testimony as to (1) the jobs a claimant can work in given the limitations and residual functional

21  capacity and (2) the availability of these jobs on a national scale); see also Moncada v. Chater, 60

22  F.3d 521, 524 (9th Cir. 1995) (concluding that vocational experts have the authority to testify

23  whether a particular plaintiff would be able to perform specific jobs within DOT

24  subcategories); Distasio v. Shalala, 47 F.3d 348, 350 (9th Cir. 1995); see also Barker v. Secretary

25  of Health and Human Svcs., 882 F.2d 1474, 1478 n.1 (9th Cir. 1989) (holding that a plaintiff

26  restricted to sedentary work is not automatically barred from performing all "light" jobs when

27  plaintiff was still capable of performing a subcategory of "light" jobs); see also Terry v. Sullivan,

28  903 F.2d 1273, 1277 (9th Cir. 1990).

21

Plaintiff contends that the ALJ did not resolve the apparent conflict between the vocational expert's testimony and the DOT.  See ECF No. 16, pgs. 17-18.  According to Plaintiff, the conflict exists in the definition of exertional levels.  See id. at 18.  Plaintiff argues:

> . . . [T]he ALJ does not provide any reasons with the Federal Rules or the Social Security Regulations which allows for a redefinition of exertional levels. In this case the VE states that a "medium" exertional job can be worked as a sedentary job. The ALJ is required to use authority to resolve conflict that can be reasonably understood. Otherwise, there would be no need to use exertional levels. As such, the ALJ has left the Vocational Expert's rationalization to conflict with the DOT. Therefore, the ALJ's findings are not supported by substantial evidence.
>
> Id.

Plaintiff's argument is not persuasive.  As indicated above, the ALJ acknowledged that there was a conflict between the vocational expert's testimony and the DOT definitions.  See CAR 20.  Moreover, the record reflects that the ALJ specifically asked the vocational expert about this conflict.  See id.  The vocational expert testified that the DOT categorizes various jobs based on highest exertional level for a particular job, and not necessarily the full range of exertional levels at which a job is actually performed in the national economy.  See id.  Given the ALJ's identification of the conflict and elicitation of additional vocational expert testimony to resolve the conflict, the Court finds that the ALJ adequately rebutted the presumption of applicability of the DOT.

### 2.    Number of Jobs

Plaintiff contends that the ALJ failed to cite to a significant number of jobs and, thus, did not support the vocational findings with "substantial evidence."  See ECF No. 16, pgs. 18-19.  The Court rejects this argument as unpersuasive.  As outlined above, the vocational expert identified three jobs and the numbers of those jobs available nationally – Office Helper, with 100,000 positions nationally; Information Clerk, with 80,000 jobs nationally; and Hand Packager, with 10,000 positions nationally.  See CAR 20.  The numbers of jobs available nationally identified by the vocational expert are sufficient.  See Gutierrez v. Colvin, 740 F.3d 519, 527-29 (9th Cir. 2014) (holding that 25,000 jobs nationally is a significant number); Yelovich v. Colvin, 532 Fed. Appx. 700, 702 (9th Cir. 2013) (unpublished) (concluding that, although the VE incorrectly

referenced two of the three occupations, the VE testified that 900 regional and 42,000 national jobs existed for the third occupation, which independently was significant) (citing Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012), as amended, and Barker v. Sec'y of Health and Human Servs., 882 F.2d 1474, 1478-79 (9th Cir. 1989)).

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment, ECF No. 16, is granted;

2.      Defendant's motion for summary judgment, ECF No. 21, is denied;

3.      The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and

4.      The Clerk of the Court is directed to enter judgment and close this file.

Dated:  August 3, 2022

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

23